**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| | § | |
| | § | |
| TRAXXAS LP, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Case No. 2:14–CV-945–JRG-RSP |
| | § | |
| HOBBY PRODUCTS INTERNATIONAL, | § | |
| INC. d/b/a HPI RACING, | § | |
| | § | |
| *Defendant.* | § | |
| | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

On August 3, 2015, the Court held a hearing to determine the proper construction of the disputed claim terms in United States Patent No. 8,315,040 ("the '040 Patent"). After considering the arguments made by the parties at the hearing and in the parties' claim construction briefing (Dkt. Nos. 53, 55, and 57), the Court issues this Claim Construction Memorandum and Order.

TABLE OF CONTENTS

I.      BACKGROUND .................................................................................................... 3

II.     APPLICABLE LAW ............................................................................................ 5

III.    CONSTRUCTION OF DISPUTED TERMS ..................................................... 8

        1.   "configured to be offset" ............................................................... 8

        2.   "first seal" ...................................................................................... 22

        3.   Dependent Claim 12: Analysis Under 35 U.S.C. §112 ¶ 4 and 35 U.S.C. §112 ¶ 2 ..................................................................................... 30

        4.   Dependent Claim 24: Analysis Under 35 U.S.C. §112 ¶ 4 and 35 U.S.C. §112 ¶ 2 ..................................................................................... 31

        5.   Dependent Claim 27: Analysis Under 35 U.S.C. §112 ¶ 4 and 35 U.S.C. §112 ¶ 2 ..................................................................................... 33

        6.   Dependent Claim 19: Analysis Under 35 U.S.C. §112 ¶ 4 ......... 35

        7.   Dependent Claim 21: Analysis Under 35 U.S.C. §112 ¶ 4 ......... 36

        8.   Dependent Claims 28, 29, 30, and 32: Analysis Under 35 U.S.C. §112 ¶ 4 37

        9.   Dependent Claims 10 and 11: Analysis Under 35 U.S.C. §112 ¶ 4 ............. 39

IV.     CONCLUSION ................................................................................................... 41

## I.     BACKGROUND

The '040 Patent is titled "Protective Enclosure for Model Vehicle" and was filed on November 10, 1992. The '040 Patent relates to a protective enclosure that protects radio controlled ("RC") vehicle parts from contaminants by retaining its sealing properties while allowing conveyances (e.g., wires) to pass from the inside to the outside of the enclosure. *See* '040 Patent at Abstract.[1] Figure 2 of the '040 Patent illustrates an exemplary embodiment of the claimed protective enclosure 100.



*FIG. 2*

---

[1] The Abstract of the '040 Patent follows:

The present invention provides for a protective enclosure comprising a base comprising a first continuous mating surface and at least one conveyance aperture, a cover comprising a second continuous mating surface, wherein the second continuous mating surface is configured to form a seal with the first continuous mating surface, and a clamp, wherein at least a portion of the clamp is coupleable to the base, wherein a mouth of the clamp is configured to be offset from the aperture when the clamp is coupled to the base, wherein the clamp comprises a first sealing layer, and wherein the clamp is configured to seal the aperture against contaminants. The protective enclosure may be configured for use in a remotely controllable model vehicle to protect a control module.

*Id.* at Figure 2. The specification states that the enclosure includes a cover 104, a base 102, a clamp 106 having a top portion 106a, a bottom portion 106b, and a mouth 108, through which conveyances such as ribbon cables 110 and wire 114 may traverse the enclosure. *Id.* at 2:21–25. The specification adds that base 102 of the enclosure comprises a conveyance aperture 212, which permits the conveyances to pass from the inside to the outside of the enclosure. *Id.* at 3:55–57. The specification further states that the aperture is "configured to be offset" from the mouth of the clamp. *Id.* at 3:57–58.

The specification states that clamp 106 may include flexible layers 116 and 118, which also form sealing layers. *Id.* at 3:9–10. The specification adds that "[w]hen assembled with ribbon cables 110 and wire 114 in place, flexible layers 116 and 118 compress and conform to the shapes and sizes of the transverse conveyances. For example, flexible layers 116 and 118 form a seal 119 to prevent contaminants from entering enclosure 100, even when ribbon cables 110 and wire 114 pass through mouth 108 of clamp 106." *Id.* at 3:13–19.

Plaintiff brings suit alleging infringement of claims 1–3, 6–13, 18–21, and 23–33 of the '040 Patent. Claim 1 of the '040 Patent is an exemplary claim and recites the following elements (disputed term in italics):

> 1. A protective enclosure comprising:
> a base comprising a first continuous mating surface and at least one conveyance aperture configured for passage between the inside of the enclosure and the outside of the enclosure of at least one conveyance, wherein the at least one conveyance comprises one or more wires separated from immediate surroundings and preventing passage of contaminants past or between the one or more wires by electrical insulation material encasing the one or more wires;
> a cover comprising a second continuous mating surface, wherein the second continuous mating surface is configured to form a seal with the first continuous mating surface; and

a clamp comprising a mouth having an upper mouth portion and a lower mouth portion, wherein at least a portion of the clamp is coupleable to the base, wherein the mouth of the clamp is *configured to be offset* from the aperture when the clamp is coupled to the base,

wherein the clamp further comprises a *first seal* having at least a portion compressed by the upper mouth portion and the lower mouth portion within the mouth of the clamp, and wherein the *first seal* is configured with one or more flexible surfaces to conform around at least a portion of opposite sides of the at least one conveyance traversing the mouth to seal the aperture against contaminants.

## II.   APPLICABLE LAW

### A.  Claim Construction

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Innova/Pure Water Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). To determine the meaning of the claims, courts start by considering the intrinsic evidence. *See id.* at 1313. *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 861 (Fed. Cir. 2004); *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group, Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001). The intrinsic evidence includes the claims themselves, the specification, and the prosecution history. *See Phillips*, 415 F.3d at 1314; *C.R. Bard, Inc.*, 388 F.3d at 861. Courts give claim terms their ordinary and accustomed meaning as understood by one of ordinary skill in the art at the time of the invention in the context of the entire patent. *Phillips*, 415 F.3d at 1312–13; *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003).

The claims themselves provide substantial guidance in determining the meaning of particular claim terms. *Phillips*, 415 F.3d at 1314. First, a term's context in the asserted claim can be very instructive. *Id*. Other asserted or unasserted claims can also aid in determining the

claim's meaning because claim terms are typically used consistently throughout the patent. *Id*. Differences among the claim terms can also assist in understanding a term's meaning. *Id*. For example, when a dependent claim adds a limitation to an independent claim, it is presumed that the independent claim does not include the limitation. *Id*. at 1314–15.

"[C]laims 'must be read in view of the specification, of which they are a part.'" *Id*. (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc)). "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Id*. (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). This is true because a patentee may define his own terms, give a claim term a different meaning than the term would otherwise possess, or disclaim or disavow the claim scope. *Phillips*, 415 F.3d at 1316. In these situations, the inventor's lexicography governs. *Id*. The specification may also resolve ambiguous claim terms "where the ordinary and accustomed meaning of the words used in the claims lack sufficient clarity to permit the scope of the claim to be ascertained from the words alone." *Teleflex, Inc.*, 299 F.3d at 1325. But, "'[a]lthough the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims.'" *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998) (quoting *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988)); *see also Phillips*, 415 F.3d at 1323. The prosecution history is another tool to supply the proper context for claim construction because a patent applicant may also define a term in prosecuting the patent. *Home Diagnostics, Inc., v. Lifescan, Inc.*, 381 F.3d 1352,

1356 (Fed. Cir. 2004) ("As in the case of the specification, a patent applicant may define a term in prosecuting a patent.").

Although extrinsic evidence can be useful, it is "'less significant than the intrinsic record in determining the legally operative meaning of claim language.'" *Phillips*, 415 F.3d at 1317 (quoting *C.R. Bard, Inc.*, 388 F.3d at 862). Technical dictionaries and treatises may help a court understand the underlying technology and the manner in which one skilled in the art might use claim terms, but technical dictionaries and treatises may provide definitions that are too broad or may not be indicative of how the term is used in the patent. *Id.* at 1318. Similarly, expert testimony may aid a court in understanding the underlying technology and determining the particular meaning of a term in the pertinent field, but an expert's conclusory, unsupported assertions as to a term's definition are entirely unhelpful to a court. *Id.* Generally, extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms." *Id.*

## B. Construction Indefiniteness

Patent claims must particularly point out and distinctly claim the subject matter regarded as the invention. 35 U.S.C. § 112 ¶ 2. Whether a claim meets this definiteness requirement is a matter of law. *Young v. Lumenis, Inc.*, 492 F.3d 1336, 1344 (Fed. Cir. 2007). A party challenging the definiteness of a claim must show it is invalid by clear and convincing evidence. *Takeda Pharm. Co. v. Zydus Pharms. USA, Inc.*, 743 F.3d 1359, 1368 (Fed. Cir.2014). The ultimate issue is whether someone working in the relevant technical field could understand the bounds of a claim. *Haemonetics Corp. v. Baxter Healthcare Corp.*, 607 F.3d 776, 783 (Fed. Cir. 2010). Specifically, "[a] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those

skilled in the art about the scope of the invention." *Nautilus Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2124 (2014).

"A claim in dependent form shall contain a reference to a claim previously set forth and then specify a further limitation of the subject matter claimed." 35 U.S.C. § 112 ¶ 4. The Federal Circuit has "suggested that a violation of § 112, P4 renders a patent invalid just as violations of other paragraphs of § 112 would." *Pfizer Inc. v. Ranbaxy Labs.*, 457 F.3d 1284, 1292 (Fed. Cir. 2006). As the Court stated in *Pfizer,* "'[i]nvalidity of the patent or any claim in suit for failure to comply with any requirement of sections 112 or 251 of this title' is expressly included among the available defenses to an infringement suit. 35 U.S.C. § 282(3)." *Id.*

### III.     CONSTRUCTION OF DISPUTED TERMS

The parties' dispute focuses on the meaning and scope of thirteen terms/phrases in the '040 Patent.

### 1.  "configured to be offset"

| Disputed Term | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|
| **"configured to be offset"** | "configured to be displaced in any direction" | "configured to be out of alignment" <br> - or - <br> "configured to be laterally displaced in any direction" |

### a)  The Parties' Positions

The parties agree that the recited "offset" refers to a spatial displacement that is defined by the relative positions of the clamp mouth and the conveyance aperture. The parties dispute whether the displacement must include a lateral displacement, such that the mouth and aperture are not aligned with one another, as Defendant contends. Plaintiff argues that Defendant's construction is vague and provides little or no guidance as to the scope of the term. (Dkt. No. 53 at 5.) Plaintiff contends that the claim language defines "configured to be offset." (*Id.*) Plaintiff

argues that none of the independent claims impose any limitation on the term "configured to be offset." (*Id.* at 5–6.) Plaintiff contends that dependent claim 21, which necessarily narrows independent claim 20, explicitly defines "configured to be offset." (*Id.* at 6.) According to Plaintiff, claim 21 defines a "mouth centerpoint" in the center of the clamp mouth perimeter and closest to the aperture; defines an "aperture centerpoint" in the center of the aperture perimeter; and defines "configured to be offset" to mean that the mouth centerpoint is displaced from the aperture centerpoint in any direction. (*Id.*)

Plaintiff also contends that Defendant's construction has no basis in the claims. (*Id.* at 7.) Plaintiff also argues that Defendant unnecessarily introduces extrinsic evidence from dictionaries. (*Id.*) Plaintiff contends that the dictionary definitions contradict the definition provided by claim 21. (*Id.*) Plaintiff further argues that its construction is consistent with the specification. (*Id.* at 8) (citing '040 Patent at 3:55–62). Plaintiff contends that the specification contemplates the aperture and mouth being "displaced in any direction." (*Id.*) Plaintiff argues that Defendant's construction of "configured to be out of alignment" suggests only an offset that results in improper positioning. (*Id.*)

Finally, Plaintiff contends that the prosecution history supports its construction. (*Id.* at 9.) Plaintiff argues that in the July 2, 2010 Non-Final Rejection, the examiner analogized the conveyance aperture of the prior art's (U.S. Patent No. 6,602,089 to Abe ("Abe")) through-holes (*see* Abe Figure 4, element 9a) and asserted that a "mouth of the clamp is configured to be offset from the aperture when the mouth is coupled to the base." (*Id.*) (citing Dkt. No. 53-4 at 2–3). Plaintiff argues that in the September 27, 2010 Response, the patentees distinguished Abe based on the sealing limitations but made no attempt to do so based on the "configured to be offset" limitation. (Dkt. No. 53 at 9) (citing Dkt. No. 53-5 at 8–11). Plaintiff further argues that in

response to subsequent office actions, the patentee continued to distinguish Abe based on the sealing limitations, not the "configured to be offset limitation." (Dkt. No. 53 at 10) (citing Dkt. No. 53-9 at 10–15; Dkt. No. 53-10 at 17–19; Dkt. No. 53-11 at 10–15). Plaintiff contends that the mouth and aperture in Abe are not "out of alignment." (*Id.*) Plaintiff further argues that both the examiner and the patentees understood that the through-holes and mouth described by Abe were "configured to be offset" horizontally. (*Id.*)

Defendant responds that the patent specification teaches that "[a]perture 212 is configured to be offset from mouth 108 of clamp 106, illustrated as aperture 212 being vertically offset and below the expected location of mouth 108, when clamp 106 is assembled." (Dkt. No. 55 at 12) (quoting '040 Patent at 3:55–61). Defendant contends that when describing the preferred embodiment, the specification correlates the phrase "configured to be offset" to the vertical offset between aperture 212 and the clamp mouth 108. (Dkt. No. 55 at 12.) Defendant argues that the patent explains that the reason for the offset is to have the conveyance (*e.g.*, the ribbon cable or wire) travel along a curved path, thus contributing to the ability of the assembly to prevent contamination of the interior of the enclosure. (*Id.*) (citing '040 Patent at 3:63–4:6). Defendant contends that to create this curved path, the specification explains that the offset need not be vertical, but instead may be a "horizontal or diagonal offset." (Dkt. No. 55 at 12) (citing '040 Patent at 3:61–62). According to Defendant, the horizontal, vertical, and diagonal offsets are the only spatial offsets between the aperture 212 and the clamp mouth 108 that are taught by the specification. (Dkt. No. 55 at 13.)

Defendant further argues that a line passing through the center of conveyance aperture 212 and through the center of clamp mouth 108 would not have a lateral offset (i.e., no horizontal, vertical, or diagonal offset). (*Id.*) Defendant contends that Plaintiff's proposed

construction reads on this orientation, interpreting the displacement along the line between the aperture and mouth as the "offset." (*Id.*) According to Defendant, that interpretation is unsupported by the patent, the prosecution history, and the canons of claim construction. (*Id.*)

Defendant argues that the specification teaches avoiding this orientation. (*Id.* at 14) (citing '040 Patent at 3:55–61). Defendant further argues that the specification also teaches against this orientation because it fails to create a curved path for the transverse conveyance to follow between the aperture and the mouth. (*Id.*) (citing '040 Patent at 3:63–4:6). Defendant also contends that if the claim term is interpreted as broadly as Plaintiff proposes, it will read on every assembly that includes a conveyance aperture and a clamp mouth regardless of their relative orientations. (Dkt. No. 55 at 14.) Defendant argues that there will always be some displacement between the conveyance aperture and the mouth of the clamp along a line between the two spaces (*i.e.*, "linear displacement"). (*Id.*) Defendant further argues that such an interpretation would render the claim language "configured to be offset" superfluous. (*Id.*)

Defendant also argues that during prosecution of the '040 Patent the examiner interpreted the claim term "configured to be offset" to require that the mouth of the claim have a lateral offset relative to the conveyance aperture. (*Id.*) Defendant contends that the examiner explained how the aperture and mouth of the clamp in Abe are "configured to be offset" by stating "leftmost aperture with cable 4a is offset from mouth exit centerpoint, fig. 1." (*Id.* at 15) (Dkt. No. 53-8 at 10). According to Defendant, Figures 3 and 4 of Abe show the leftmost aperture for cable 4a (topmost aperture in Figure 4) is horizontally offset from the clamp mouth (7f and 8f). (Dkt. No. 55 at 15.) Defendant argues that if a non-lateral displacement between the aperture and mouth meets the claim term, the examiner could have referred to any of the apertures for cable 4a to satisfy the claim term, because all of the apertures have a non-lateral spatial displacement

from the clamp mouth. (*Id.*) Defendant contends that the examiner made a point of referring to the leftmost aperture because that is the aperture for which the lateral displacement (horizontal, in this case) is most easily seen. (*Id.*)

Defendant further argues that during prosecution, the patentees never rebutted the examiner's interpretation that the claim term "configured to be offset" referred to a lateral offset. (*Id.*) Defendant also argues that Plaintiff incorrectly argues that the mouth and aperture in Abe are not out of alignment. (*Id.*) Defendant contends that the leftmost aperture relied on by the examiner has a horizontal displacement relative to the clamp mouth, and that the conveyance passing through that leftmost aperture bends between the aperture and the mouth to travel that horizontal displacement. (*Id.*) Finally, Defendant argues that dictionary definitions of "offset" are consistent with its proposed construction. (*Id.*) (citing Dkt. No. 55-6 at 1–5).

Plaintiff replies that Defendant's construction of "configured to be out of alignment" excludes an application of claim 21, where the mouth centerpoint and aperture centerpoint are displaced horizontally. (Dkt. No. 57 at 1.) Regarding Defendant's alternate construction of "configured to be laterally displaced in any direction," Plaintiff argues that it is unclear what Defendant intends "lateral" to mean. (*Id.*) According to Plaintiff, applying the dictionary definition of "lateral" would exclude the preferred embodiment where the vertical offset between the mouth and the aperture results in the conveyance entering the mouth from below, not from the side. (*Id.* at 2) (citing Definition of "Lateral" by Merriam-Webster, http://www.merriam-webster.com/dictionary/lateral). Plaintiff further argues that this presumably indicates that Defendant intends "lateral" to mean that the conveyance must bend. (Dkt. No. 57 at 2.) Plaintiff contends that the plain language of claim 21 does not require the conveyance to bend. (*Id.*) Plaintiff further argues that the claim language is clear and the Court should not resort to the

specification, the prosecution history, or dictionary definitions. (*Id.*)

Plaintiff further disagrees with Defendant's statement that Plaintiff's construction would result in "configured to be offset" reading on every assembly that includes a conveyance aperture and a clamp mouth. (*Id.* at 3.) Plaintiff argues that under its construction "configured to be offset" imposes a meaningful limitation, namely, that the mouth and aperture must be displaced. (*Id.*) Plaintiff contends that Defendant provides no support for its contention that the displacement between the aperture and mouth cannot be linear. (*Id.*)

For the following reasons, the Court finds that the phrase **"configured to be offset"** should be construed to mean **"configured to be displaced in any direction."**

### b) Analysis

The phrase "configured to be offset" appears in claims 1, 13, 20, and 21 of the '040 Patent. The Court finds that the phrase is used consistently in the claims and is intended to have the same general meaning in each claim. The Court further finds that the plain language of the claims indicates that the disputed phrase "configured to be offset" defines a spatial relationship between the mouth of the clamp and the aperture. For example, the preferred embodiment illustrates the mouth offset from the aperture in both a vertical and an axial direction. *See, e.g.,* '040 Patent at Figure 7 (illustrating mouth 108 and aperture 212). Defendant refers to the axial offset as "linear displacement." (Dkt. No. 55 at 14.) Plaintiff refers to the axial offset as "horizontal" displacement. (Dkt. No. 53 at 7.) For clarity, the Court annotated the following figure from Defendant's brief to illustrate what the Court means when it refers to an "axial offset."



Dkt. No. 55 at 13 (annotated). As illustrated above, the Court finds that a person of ordinary skill in the art would understand that an axial offset would be a component that establishes the spatial relationship between the mouth and the aperture. Therefore, the Court finds that the claims are not limited to only "lateral displacement," as Defendant contends. Indeed, dependent claim 21 recites that the clamp mouth is "configured to be offset" from the conveyance aperture "in any direction." As discussed, "in any direction" can be vertical, horizontal, or diagonal. Specifically, the specification states:

> Aperture 212 is configured to be offset from mouth 108 of clamp 106, illustrated as aperture 212 being vertically offset and below the expected location of mouth 108, when clamp 106 is assembled. *It should be understood, however, that a different offset, such as a*

*horizontal or diagonal offset, may be used.*

'040 Patent at 3:57–62 (emphasis added). Defendant is correct that Figure 2 illustrates the mouth and the aperture "out of alignment" or "laterally displaced," but this is only one exemplary embodiment. *Id.* at 3:57–62. The specification makes this clear by noting "that the embodiments disclosed are illustrative rather than limiting in nature and that a wide range of variations, modifications, changes, and substitutions are contemplated in the foregoing disclosure and, in some instances, some features of the present invention may be employed without a corresponding use of the other features." *Id.* at 4:63–5:3.

One variation of the embodiment illustrated in Figure 2 is when the aperture is axially offset from the mouth, without also being vertically offset. Accordingly, the Court finds that neither the claims nor the specification indicates that the claims should be limited to the illustrated embodiment. *Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, 595 F.3d 1340, 1352 (Fed. Cir. 2010) ("[W]hen the specification uses a single embodiment to enable the claims, courts should not limit the broader claim language to that embodiment 'unless the patentee has demonstrated a clear intention to limit the claim scope using words or expressions of manifest execution or restriction.'") (quoting *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 905 (Fed. Cir. 2004)).

Turning to the prosecution history, the Court finds that the patentees did not disclaim embodiments where the mouth and the aperture are only axially offset. Contrary to Defendant's suggestion, the patentees did not distinguish the prior based on the mouth being "out of alignment" from the aperture. Instead, the patentees distinguished the prior art based on its failure to disclose the recited clamp seal. In rejecting the claims, the examiner relied on U.S. Patent No. 6,602,089 to Abe ("Abe") as invalidating prior art. Figures 1 and 2 of Abe follow:



Dkt. No. 55-4 at 2–3 (Abe, Figures 1 and 2 (highlighted)). Specifically, the examiner rejected claim 1 in the December 7, 2010 Office Action by equating the recited aperture to Abe's through-holes (Figure 2, element 9a). The examiner stated that the "mouth of the clamp [7 and 8, Figure 1] is configured to be offset from the aperture when the mouth is coupled to the base (fig. 1)." (Dkt. No. 53-6 at 2).

In the March 7, 2011 Office Action Response, the patentees distinguished Abe based on the sealing limitations, and not on the "configured to be offset" limitation. Specifically, the patentees argued the following:

> However, Abe does not suggest, teach, or disclose a clamp having a mouth offset from an aperture, where the clamp seals the aperture from contaminants by compressing a sealing layer to conform around a conveyance. Specifically, the camera case 3 of Abe is sealed by the mat seal 9 at the through-hole 3f, which the Examiner cites as the aperture of the enclosure. Abe, col. 15, lines 63 - 67. The through-hole 3f is not sealed in the claimed manner by the guiding portions 7f and 8f. See Applicant's annotations to Figure 4, below.



*Portion of Figure 4 of Abe. Applicant's annotations showing mat seal 9 seals the through-hole 3f.*

. . .

Here, Abe does not show, expressly or inherently, that the guiding portions 7f and 8f compress the tube 4d. Figure 1 shows that the guiding portions 7f and 8f have rounded inner surfaces forming a circular aperture for the tube 4d to pass . . . A person of ordinary skill would not have understood the description, including the figures, of the guiding portions 7f and 8f as making contact with the tube 4d to compress any portion of the tube 4d. To be compressed by the inner surfaces of the guiding portions 7f and 8f, the tube 4d would need to have a larger diameter than the circular aperture, which is not shown in Figure 1 or described elsewhere in Abe. It would have been apparent to persons of ordinary skill that the diameter of 4d is not large enough to result in compression when the guiding portions 7f and 8f are mated.



*Portion of Figure 1 of Abe. Applicant's annotations showing rounded portions of guiding portions 8f and 7f.*

(Dkt. No. 53-9 at 11–14.) Consistent with these arguments, the patentees later amended the claims to further clarify the clamp seal. For example, in the September 14, 2011 Office Action Response the patentees explained:

> Rejected independent Claim 1 as now clarified recites one of the distinguishing characteristics of the present invention, namely,
>
>> wherein the clamp further comprises a first <u>seal</u> having at least a portion compressed by the upper mouth portion and the lower mouth portion within the mouth of the clamp, and wherein the first <u>seal</u> is configured <u>with flexible surfaces</u> to conform around at least a portion of <u>opposite sides of</u> at least one conveyance traversing the mouth to seal the aperture against contaminants.

(Dkt. No. 53-10 at 17) (emphasis in original). Accordingly, the Court finds that the patentees did not distinguish the prior art based on the recited aperture and mouth being "out of alignment" or "laterally displaced." Instead, the patentees argued that Abe lacked the required clamp seal, which the patentees clarified by amending the independent claims 1, 13, and 20. Thus, the Court finds that the patentees did not clearly and unmistakably disclaim embodiments where the

recited aperture and mouth are not "out of alignment" or "laterally displaced." *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1325–1326 (Fed. Cir. 2003) ("[F]or prosecution disclaimer to attach, our precedent requires that the alleged disavowing actions or statements made during prosecution be both clear and unmistakable.").

Defendant contends that the claims require that the displacement between the mouth and the aperture must include a "lateral displacement," such that the mouth and aperture are not aligned with one another." (Dkt. No. 55 at 12.) Defendant argues that the preferred embodiment correlates the phrase "configured to be offset" to the vertical offset between aperture 212 and the clamp mouth 108. (*Id.*) Defendant further contends that the patent explains that the reason for the offset is to have the conveyance (e.g., the ribbon cable or wire) travel along a curved path. (*Id.*)

The Court agrees that the specification indicates that offsetting the mouth from the aperture in a vertical direction is one preferred embodiment that can exclude contaminates. However, as discussed above, the specification makes clear that a vertical offset is not the only offset that will exclude contaminates. '040 Patent at 3:57–62 ("It should be understood, however, that a different offset, such as a horizontal or diagonal offset, may be used."). Indeed, the preferred embodiment illustrates not only a vertical offset between the mouth and the apertures, but also illustrates an axial offset between the mouth and the aperture. In other words, a mouth that is "configured to be offset" axially from the aperture will also exclude contaminates when combined with the other claimed elements.

Defendant argues that the patent teaches to avoid the orientation where the mouth is axially offset from the aperture. (Dkt. No. 55 at 14.) The Court disagrees and finds that although the preferred embodiment illustrates the conveyances following a curved path, nothing in the intrinsic evidence requires the conveyances to follow a curved path. Instead, the specification

describes this as a preferred embodiment and explicitly states that "embodiments disclosed are illustrative rather than limiting in nature and that a wide range of variations, modifications, changes, and substitutions are contemplated in the foregoing disclosure . . . ." '040 Patent at 4:65–5:1.

The Court also disagrees that construing the phrase "configured to be offset from" to mean "configured to be displaced in any direction" renders the limitation superfluous. Instead, the construction maintains the spatial limitation by requiring the mouth and the aperture to be displaced from one another in any direction. This displacement allows the protective enclosure to include at least one "sealing layer" that prevents contaminants from entering the enclosure. '040 Patent at 3:23–28 ("Thus, the illustrated embodiment of enclosure 100 comprises at least three sealing layers: the set of conveyance alignment guides 112, flexible layer 116 and flexible layer 118. However, it should be understood that some embodiments may comprise a greater or lesser quantity of sealing layers.").

Defendant also argues that the examiner's reference to the "leftmost aperture" of cable 4a indicates that the examiner understood a lateral displacement was required. (Dkt. No. 55 at 15.) Specifically, Defendant contends that "[t]he leftmost aperture relied on by the Examiner has a horizontal displacement relative to the clamp mouth, and the conveyance passing through that leftmost aperture bends between the aperture and the mouth to travel that horizontal displacement." (*Id.*) The Court agrees with Defendant that this appears to be the examiner's understanding. However, the examiner only made this statement for dependent claim 21 (original claim 29), and did not include this statement for any of the independent claims. Dependent claim 21, which narrows independent claim 20, includes an additional limitation that requires the aperture to be "out of alignment" with the mouth. Specifically, claim 21 recites the

following:

> The protective enclosure of claim 20, wherein the mouth of the clamp comprises a mouth centerpoint comprising a point substantially centered in a portion of an outer perimeter of the clamp mouth nearest to the conveyance aperture;
>
> wherein the conveyance aperture of the enclosure member comprises an aperture perimeter nearest to the clamp mouth;
>
> wherein an aperture centerpoint comprises a point substantially centered within the aperture perimeter; and
>
> wherein the clamp mouth, when the first clamp surface is in the clamped position, is *configured to be offset* from the conveyance aperture *by displacement of the mouth centerpoint from the aperture centerpoint in any direction.*

'040 Patent at 7:38–51 (emphasis added). As indicated, dependent claim 21 requires the aperture to not only be "configured to be displaced in any direction" from the mouth, but also requires the centerpoint of the aperture to be displaced in any direction from the centerpoint of the mouth. In other words, dependent claim 21 requires the centerpoint of the mouth to be "out of alignment" or "laterally displaced" from the centerpoint of the aperture. Thus, the prosecution history indicates that the examiner understood that the independent claims only require the mouth to be displaced in any direction from the aperture, and that it is dependent claim 21 that further requires an "out of alignment" requirement. To be sure, Defendant's misinterpretation of the prosecution history would have the effect of reading the limitation from dependent claim 21 into all of the independent claims. Accordingly, the Court does not adopt Defendant's construction. Finally, the Court has considered the extrinsic evidence submitted by Defendant, and given it its proper weight in light of the intrinsic evidence.

### c) Court's Construction

In light of the evidence submitted by the parties, the Court construes the phrase **"configured to be offset"** to mean **"configured to be displaced in any direction."**

### 2. "first seal"

| Disputed Term | Plaintiff's Proposal | Defendants' Proposal |
|---|---|---|
| "first seal" | Plain and ordinary meaning. OR, in the alternative: "at least one compressible sealing material having one or more flexible surfaces that prevents the passage of contaminants" | "a seal that is distinct from, and compressed by, surfaces of the clamp" |

### a) The Parties' Positions

The parties dispute whether the recited "first seal" must be distinct from the recited clamp. Plaintiff argues that the term "first seal" is easily understood and should be given its plain and ordinary meaning. (Dkt. No. 53 at 11.) In the alternative, Plaintiff contends that the term "first seal" should be construed consistently with the term "seal," which occurs elsewhere in the claims. (*Id.*) Plaintiff argues that Defendant's construction requires the "first seal" to be a distinct (*i.e.*, physically separate) component compressed by surfaces of the clamp. (*Id.*) Plaintiff contends that this is not required by the claim language, and is inconsistent with the term "seal" as used elsewhere in the claims. (*Id.*)

Plaintiff further argues that the plain language of the claims does not require a physically separate component that is wholly compressed by the clamp surfaces. (*Id.*) Plaintiff contends that the independent claims recite specific structural and functional features of the "first seal," but do not require that the first seal be "distinct from, and compressed by, surfaces of the clamp." (*Id.* at 12–13.) Plaintiff further contends that claims 1 and 13 only require "at least a portion [of the first seal] compressed" by or between the upper and lower mouth portions of the clamp, and that claim 20 only requires that "the sealing material of the first seal is compressed between the first clamp surface and the second clamp surface." (*Id.* at 13.)

Plaintiff further argues that the term "seal" appears elsewhere in the claims to describe

different claimed elements. (*Id.*) Plaintiff argues that the Court should recognize that "first seal" merely identifies that seal and distinguishes it from the "seal," "enclosure seal," and "liquid resistant seal" of claims 1, 13, and 24, respectively. (*Id.* at 14.) Plaintiff also argues that the Court should construe "seal" consistently across all the claims. (*Id.*) According to Plaintiff, "seal" has a commonly understood plain meaning, and the Court should apply that same plain and ordinary meaning to "first seal." (*Id.*) Plaintiff further argues that the specification consistently uses "seal" in its broad, ordinary sense. (*Id.* at 15) (citing '040 Patent at 3:16–23, 4:46–49, 4:14–26, and 2:58–3:3). Plaintiff contends that the patentees used the term "seal" in multiple contexts without according any special meaning to the term. (Dkt. No. 53 at 16.)

Plaintiff also argues that the prosecution history is replete with uses of the term "seal" in its plain and ordinary sense. (*Id.* at 17.) Plaintiff contends that both the patentees and the examiner used "seal" in its broad, ordinary sense, and neither required the "first seal" to be "distinct from, and compressed by, surfaces of the clamp." (*Id.*)

Defendant responds that the intrinsic evidence supports interpreting "first seal" to mean that the "first seal" is compressed by surfaces of the recited clamp. (Dkt. No. 55 at 16.) Defendant states that it is not asking the Court to construe the term "seal" by itself because the term "first seal" is used in the claims to have a narrower meaning than the generic term "seal." (*Id.*) Defendant argues that each of the independent claims require the recited "first seal" to be structure that is distinct from the portions or surfaces of the clamp that perform the act of compressing the first seal. (*Id.* at 17.) According to Defendant, it is a matter of logic and grammar that if the first seal is compressed by (or between) something else, that something else cannot be part of the first seal. (*Id.*) Defendant argues that this interpretation is fully supported by the patent specification. (*Id.* at 17–18) (citing '040 Patent at 2:21–25 and 3:9–19). Defendant

contends that the specification illustrates flexible layers (116, 118) forming the "first seal" in the preferred embodiment, with the top and bottom portions (106a, 106b) being the rigid structures of the clamp that form the recited upper and lower mouth portions of Claims 1 and 13 (and the first and second clamp surfaces of Claim 20) between which the "first seal" is compressed. (Dkt. No. 55 at 18.)

Defendant also argues that during prosecution the patentees amended the claims to refer to a "first seal" as a separate structure from the upper and lower mouth portions of the clamp. (*Id.*) (citing Dkt. No. 53-10 at 14). According to Defendant, the patentees made it clear that the newly recited structure was not directed at the clamp mouth portions, but rather "to clarify that the claim refers to the structure that seals [the] mouth of the clamp[.]" (*Id.*) Defendant contends that the patentees referred the examiner to the specification's reference to seal 119 formed from flexible layers 116 and 118. (Dkt. No. 55 at 18) (citing Dkt. No. 53-10 at 14–15).

Defendant also argues that the examiner concluded that Abe discloses the "first seal" in the form of "flexible sealing parts 4d and 9" which "both contact the inside parts of the mouth of the clamp [shown as separate structure of the clamp] to seal the inner area." (Dkt. No. 55 at 18) (citing Dkt. No. 53-8 at 3). Defendant contends that during prosecution, the patentees did not challenge the examiner's understanding or that the "first seal" read on structure in Abe that was separate from, and compressed by, the rigid clamp structure of Abe (e.g., the top and bottom clamp portions). (Dkt. No. 55 at 18.) Finally, Defendant argues that Plaintiff's proposal is flawed because it is broad enough to allow an identical structure to constitute both the "first seal" and the "clamp surfaces" and "clamp portions" between which the "first seal" is compressed. (*Id.* at 19.)

Plaintiff replies that Defendant mischaracterizes the claim language because claim 1

requires only that a portion of the "first seal" be compressed by the upper and lower mouth portions within the mouth of the recited clamp. (Dkt. No. 57 at 3.) Plaintiff further argues that both the "first seal" and the "mouth having an upper mouth portion and a lower mouth portion" are elements of the recited clamp. (*Id.*) Plaintiff contends that Defendant fails to appropriately acknowledge the interplay between the upper mouth portion, the lower mouth portion, and the [compressed] portion of the first seal. (*Id.*) Plaintiff also contends that Defendant does not allege that the patentees acted as their own lexicographer, and the Court should apply the plain and ordinary meaning of "first seal." (*Id.* at 4.)

Plaintiff further argues that the prosecution history reveals that the word "first" is a carryover from the claim's previous recitation of a "first sealing layer," which had a corresponding "second sealing layer." (*Id.*) Plaintiff argues that the patentee made clear that the amendments made were to clarify the breadth of the claim, not to narrow the claim. (*Id.*) Plaintiff contends that the patentees explained that they replaced the term "sealing layer" with the term "first seal" "to clarify that the claim refers to the structure that seals [the] mouth of the clamp, and to avoid unduly limiting the claim." (*Id.*) (citing Dkt. No. 53-10 at 14).

For the following reasons, the Court finds that the term **"first seal"** should be construed to mean **"a structure having one or more flexible surfaces used to prevent the passage of contaminants."**

### b) Analysis

The term "first seal" appears in claims 1, 6–8, 13, 18, 20, 24, 25, and 31 of the '040 Patent. The Court finds that the term is used consistently in the claims and is intended to have the same meaning in each claim. The Court further finds that the intrinsic evidence indicates that the term "first seal" should not be limited to "a seal that is distinct from, and compressed by,

surfaces of the clamp," as Defendant proposes. However, the Court is concerned that giving the term its plain and ordinary meaning may not resolve the parties' claim construction dispute. For example, Defendant's construction defines "seal" as "a seal . . . ." Thus, the issue before the Court is to resolve whether the "seal" musty be distinct from the surfaces of the clamp. The Court finds that the intrinsic evidence indicates that the recited "first seal" includes specific structural and functional features, but does not necessarily include the limitations that Defendant's construction requires. For example, independent claim 1 of the '040 Patent recites the following:

> A protective enclosure comprising:
> a base comprising a first continuous mating surface . . . ;
> a cover comprising a second continuous mating surface, wherein the second continuous mating surface is configured to form a *seal* with the first continuous mating surface; and
> a clamp comprising a mouth having an upper mouth portion and a lower mouth portion . . .
> wherein the clamp further comprises a *first seal having at least a portion compressed by the upper mouth portion and the lower mouth portion within the mouth of the clamp*, and wherein the *first seal* is *configured with one or more flexible surfaces to conform around at least a portion of opposite sides of the at least one conveyance* traversing the mouth *to seal the aperture against contaminants*.

'040 Patent at 5:10–36 (emphasis added). Similarly, independent claim 13 recites the following related to the "first seal":

> A protective enclosure for a remotely controllable model car electronics package, the enclosure comprising:
> a housing for an electronic device comprising an *enclosure seal* and at least one conveyance aperture configured to allow at least one conveyance to pass between the inside of the housing and the outside of the housing to couple to the electronic device without disturbing the *enclosure seal* . . . ;
> a clamp . . . ; and
> wherein the clamp further comprises a *first seal configured to have at least a portion compressed between the upper mouth portion and the lower mouth portion within the mouth of the clamp*, and wherein the *first seal* comprises *one or more flexible*

> surfaces configured to conform around at least a portion of
> opposites sides of the at least one conveyance.

*Id.* at 6:6–31 (emphasis added). Finally, independent claim 20 recites the following related to the

"first seal":

> a *first seal comprised of compressible sealing material having one
> or more flexible surfaces* wherein the *sealing material* of the first
> seal is compressed between the first clamp surface and the second
> clamp surface, wherein *the flexible surfaces of the first seal are
> configured to conform around at least a portion of opposite sides
> of the at least one conveyance* within the clamp mouth when the
> first clamp surface is in the clamped position *to restrict passage of
> contaminants into the enclosed space beyond the clamp mouth*[.]

*Id.* at 6:65–7:37 (emphasis added). As indicated above, none of the independent claims require

the first seal to be "distinct from surfaces of the clamp," as Defendant proposes. Instead, claims

1 and 13 require only "at least a portion [of the first seal] compressed" by or between the upper

and lower mouth portions of the clamp. Likewise, claim 20 requires only that "the sealing

material of the first seal is compressed between the first clamp surface and the second clamp

surface." Thus, the Court finds that Defendant's construction reads in an unwarranted limitation

into the claims.

However, as indicated by the claim language, the recited "first seal" must include flexible

surfaces that can be compressed. Furthermore, the claims and specification indicate that the

flexible surfaces must prevent contaminants from entering the enclosure. *See, e.g.,* '040 Patent at

3:16–23 ("For example, flexible layers 116 and 118 form a seal 119 to prevent contaminants

from entering enclosure 100, even when ribbon cables 110 and wire 114 pass through mouth 108

of clamp 106. It should be understood that flexible layers 116 and 118 are able to form the seal

119 even where ribbon cables 110 and wire 114 have differing diameters, or have been moved

from one of sub-apertures 502A-502G to another."). Thus, although the Court does not find that

the "first seal" must be distinct from the clamp, it does find that the "first seal" must have

structure with distinct characteristics. Indeed, the specification states that "some embodiments of enclosure 100 use replaceable flexible layers 116 and 118" that "may be replaced by pulling it out and affixing the replacement layer 116 or 118 in place using adhesive strip 208." *Id.* at 3:37–53.

The prosecution history further confirms that this is how a person of ordinary skill in that would interpret the recited "first seal." In the September 14, 2011 Office Action Response, the patentees amended claims 1 (original claim 1), 13 (original claim 21), and 20 (original claim 28) by replacing the term "sealing layer" with the term "first seal" "to clarify that the claim refers to the structure that seals [the] mouth of the clamp, and to avoid unduly limiting the claim." (Dkt. No. 53-10 at 14.) The patentees similarly replaced the term "first sealing layer" in claims 5, 6, and 26 "with the term 'first seal,' where Applicant[s] intend[ed] to refer to the broader structure that seals the mouth of the clamp." (*Id.* at 15.) The patentee further stated that "Applicant clarifies that the first sealing layer of Claims 6 and 26 and the second sealing layer of Claim 26 are each a part of the structure that forms the first seal. Support for this amendment may be found at least in Paragraph [0010] (describing a first and second sealing layer 116, 118 forming a first seal 119)." (*Id.*) Accordingly, the prosecution history indicates that a person of ordinary skill in the art would understand that the "first seal" must have structure with distinct characteristics.

Defendant argues that "[i]t is a matter of logic and grammar that if the first seal is compressed by (or between) something else, that something else cannot be part of the first seal." (Dkt. No. 55 at 17.) The Court agrees that the independent claims require the "first seal" to be compressed between portions or surfaces of the clamp. But this does not require the "seal" to be distinct from the clamp, any more than it requires the recited "mouth" to be distinct from the

clamp. Instead it identifies a specific structure with distinct characteristics that may or may not be separate from the clamp. Regardless, the claims require the recited "first seal" to be compressed between portions or surfaces of the clamp. If there are not portions or surfaces of the clamp that compress the "first seal," then the recited "first seal" could not prevent the passage of contaminants into the enclosure.

The Court is also not persuaded by Defendant's argument that the examiner understood the "first seal" to be separate from the clamp by relying on Abe's disclosure of "flexible sealing parts 4d and 9." (Dkt. No. 55 at 18) (citing Dkt. No. 53-8 at 3). As indicated above, the patentees amended the claims with the term "first seal" "to clarify that the claim refers to the structure that seals [the] mouth of the clamp, and to avoid unduly limiting the claim." Dkt. No. 53-10 at 14. Moreover, claims are not limited to an embodiment that the examiner identifies in the prior art. Instead, the claims are interpreted in the light of the intrinsic record in its entirety. *Hormone Research Found., Inc. v. Genentech, Inc.*, 904 F.2d 1558, 1562 (Fed. Cir. 1990) ("Claim interpretation involves a review of the specification, the prosecution history, the claims (including unasserted as well as asserted claims) . . . ."). Moreover, the prosecution history indicates that the examiner and patentees understood the "first seal" to be "structure that seals the mouth of the clamp" having distinct characteristics. (Dkt. No. 53-10 at 14.) Defendant does not point to, and the Court did not find, a disavowal of claim scope in the specification or prosecution history that would require the recited "first seal" to be "distinct from the clamp." Accordingly, the Court does not adopt Defendant's construction.

### c) Court's Construction

In light of the evidence submitted by the parties, the Court construes the term **"first seal"** to mean **"a structure having one or more flexible surfaces used to prevent the passage**

of contaminants."

### 3. Dependent Claim 12: Analysis Under 35 U.S.C. §112 ¶ 4 and 35 U.S.C. §112 ¶ 2

Defendant contends that claim 12 violates 35 U.S.C. §112 ¶ 4. (Dkt. No. 55 at 20.) Defendant argues that claim 1 recites that the "first seal is configured with one or more flexible surfaces to conform around at least a portion of opposite sides of the at least one conveyance traversing the mouth to seal the aperture against contaminants." (*Id.*) (citing '040 Patent at 5:32–36). Defendant contends that claim 12 fails to further narrow claim 1. Defendant argues that claim 12 merely repeats the requirement from claim 1 that the clamp, when compressed on the conveyance, seals the aperture against contaminants. (Dkt. No. 55 at 20.) According to Defendant, claim 12 thus violates Section 112, ¶ 4.

The Court finds that Defendant failed to prove by clear and convincing evidence that claim 12 is invalid for failing to specify a further limitation of the subject matter claimed in independent claim 1. The Court finds that read in light of the specification, and the prosecution history, claim 12 narrows claim 1. Specifically, claim 12 requires the clamp to be "further configured" to seal the aperture against contaminants. In other words, the clamp must include additional elements. For example, the specification teaches that "the set of conveyance alignment guides 112 may form a sealing layer for clamp 106. Grommets and/or other flexible sealing material, such as room temperature vulcanizing (RTV) rubber, around transverse conveyances may provide further sealing." '040 Patent at 3:4–8. Accordingly, the Court finds that Defendant failed to prove by clear and convincing evidence that claim 12 violates Section 112, ¶ 4.

Defendant also argues that claim 12 does not inform a person of ordinary skill in the art of the scope of the invention to a reasonable certainty. (Dkt. No. 55 at 25.) Defendant argues that

a person of ordinary skill cannot ascertain what about the clamp in claim 12 is "further configured" to seal the aperture against contaminants. Defendant contends the structure for sealing the aperture against contaminants when a conveyance passes through the mouth of the clamp is already fully identified in independent claim 1. (*Id.* at 25–26.) According to Defendant, claim 12 thus violates Section 112, ¶ 2.

The Court finds that claim 12 when read in light of the specification delineating the patent, and the prosecution history, informs, with reasonable certainty, those skilled in the art about the scope of the invention. *Nautilus Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2124 (2014). As discussed above, the specification gives concrete examples of such "further" sealing mechanisms, including conveyance alignment guides 112, grommets, and RTV rubber. '040 Patent at 3:4–8. Accordingly, the Court finds that Defendant failed to prove by clear and convincing evidence that claim 12 violates Section 112, ¶ 2.

### 4. Dependent Claim 24: Analysis Under 35 U.S.C. §112 ¶ 4 and 35 U.S.C. §112 ¶ 2

Defendant contends that claim 24 violates 35 U.S.C. §112 ¶ 4. Defendant argues that claim 20 recites "wherein the flexible surfaces of the first seal are configured to conform around at least a portion of opposite sides of the at least one conveyance within the clamp mouth when the first clamp surface is in the clamped position to restrict passage of contaminants into the enclosed space beyond the clamp mouth." (Dkt. No. 55 at 20) (citing '040 Patent at 5:32–36). Defendant contends that claim 24 fails to further narrow claim 20. Defendant argues that claim 24 merely rephrases the requirement from claim 20 that the clamp restrict the passage of contaminants. (Dkt. No. 55 at 20.) Defendant contends that there is no meaningful distinction between "restricting passage of contaminants" and "to resist the passage of liquid contaminants." (*Id.*) Defendant further contends that the patent itself makes no such distinction, disclosing that

the "[e]nclosure 100, as illustrated, is configured to house a control device for a model vehicle, for example a remotely controllable model car, in an environment protected from contaminants, such as water, mud, dirt and snow." (*Id.*) (citing '040 Patent at 2:40–44). According to Defendant, claim 24 thus violates Section 112, ¶ 4.

The Court finds that Defendant failed to prove by clear and convincing evidence that claim 24 is invalid for failing to specify a further limitation of the subject matter claimed in independent claim 20. The Court finds that claim 24 requires a "*liquid resistant* seal to resist the passage of *liquid* contaminants," and not just a seal configured "to restrict passage of contaminants," as claim 20 requires. *Compare* '040 Patent at 7:25–34 *with* 7:58–8:2 (emphasis added). The Court finds that a liquid resistant seal is a particular type of seal, and thus further limits the "first seal" in independent claim 20. Accordingly, the Court finds that Defendant failed to prove by clear and convincing evidence that claim 12 violates Section 112, ¶ 4.

Defendant also argues that claim 24 does not inform a person of ordinary skill in the art of the scope of the invention to a reasonable certainty. (Dkt. No. 55 at 26.) Defendant contends that a person of ordinary skill cannot ascertain what about the claimed protective enclosure in claim 24 is different than it is in claim 20. Defendant argues that the recited enclosure of claim 20 already restricts the passage of contaminants into the enclosed space, including restricting the passage of liquid contaminants. According to Defendant, claim 24 thus violates Section 112, ¶ 2.

The Court finds that claim 24 when read in light of the specification delineating the patent, and the prosecution history, informs, with reasonable certainty, those skilled in the art about the scope of the invention. *Nautilus Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2124 (2014). As discussed above, claim 24 requires a "*liquid resistant* seal to resist the passage of *liquid* contaminants," not just a seal configured "to restrict passage of contaminants," as claim

20 requires. *Compare* '040 Patent at 7:25–34 *with* 7:58–8:2 (emphasis added). The Court finds that the recited "liquid resistant seal" is a particular type of seal and informs, with reasonable certainty, those skilled in the art about the scope of the invention. Accordingly, the Court finds that Defendant failed to prove by clear and convincing evidence that claim 24 violates Section 112, ¶ 2.

### 5. Dependent Claim 27: Analysis Under 35 U.S.C. §112 ¶ 4 and 35 U.S.C. §112 ¶ 2

Defendant contends that claim 27 violates 35 U.S.C. §112 ¶ 4. Defendant argues that independent claim 20 recites "wherein the first clamp surface is movable from the clamped position forming the clamp mouth to an unclamped position relatively farther from the second clamp surface releasing the at least one conveyance from the clamp mouth." (Dkt. No. 55 at 23) (citing '040 Patent at 7:21–25). Defendant argues that dependent claim 27 recites "[t]he protective enclosure of claim 20, further comprising: wherein the at least one conveyance extending through the wall of the enclosure member is removable through the at least one conveyance aperture, when the first clamp surface is in the unclamped position." (Dkt No. 55 at 23) (citing '040 Patent at 8:26–31). Defendant contends that claim 27 does not further limit claim 20.

Specifically, Defendant argues that claim 20 already recites a clamp that has an unclamped position that "releases" the conveyances that pass through the mouth of the clamp. (Dkt. No. 55 at 23.) Defendant contends that if the conveyances are released by the clamp when the first clamp surface is in the unclamped position, they would at that point also be removable through the conveyance aperture. (*Id.*) Defendant further argues that the only structure taught by the patent that would prevent the conveyances from being removable through the conveyance aperture is the clamp when it is in the clamped position. (*Id.*) According to Defendant, claim 27

thus violates Section 112, ¶ 4.

The Court finds that Defendant failed to prove by clear and convincing evidence that claim 27 is invalid for failing to specify a further limitation of the subject matter claimed in independent claim 20. The Court finds that claim 20 requires that moving the first clamp surface to the unclamped position "releas[e] the at least one conveyance *from the clamp mouth*." '040 Patent at 7:20–24 (emphasis added). However, claim 27 additionally requires that when the first clamp surface is in the unclamped position, the conveyance "is *removable through the at least one conveyance aperture*." '040 Patent at 8:28–31 (emphasis added). The Court finds that releasing a conveyance from a clamp mouth does not necessarily require that the conveyance be removable through a conveyance aperture. For example, if a conveyance aperture contained a separate sealing mechanism, moving the first clamp surface to the unclamped position would release the conveyance from the clamp mouth, as required by claim 20, but not from the conveyance aperture, as required by claim 27. Accordingly, the Court finds that Defendant failed to prove by clear and convincing evidence that claim 27 violates Section 112, ¶ 4.

Defendant also argues that claim 27 does not inform a person of ordinary skill in the art of the scope of the invention to a reasonable certainty. (Dkt. No. 55 at 26.) Defendant contends that a person of ordinary skill cannot ascertain what about the protective enclosure claimed in claim 27 is different than the enclosure claimed in claim 20. Defendant argues that each claim recites a clamp that has an unclamped position that releases the conveyances that pass through the mouth of the clamp. (*Id.* at 27.) Defendant contends that a person of ordinary skill in the art would understand that the only structure taught by the patent that would prevent the conveyances from being removable through the conveyance aperture is the clamp when it is in the clamped position. According to Defendant, claim 27 thus violates Section 112, ¶ 2.

The Court finds that claim 27 when read in light of the specification delineating the patent, and the prosecution history, informs, with reasonable certainty, those skilled in the art about the scope of the invention. *Nautilus Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2124 (2014). As discussed above, a person of ordinary skill in the art would understand the distinction between releasing the conveyance from the mouth, as in claim 20, versus releasing it from the aperture, as in claim 27. For example, if a conveyance aperture contained a separate sealing mechanism, moving the first clamp surface to the unclamped position would release the conveyance from the clamp mouth, as required by claim 20, but not from the conveyance aperture, as required by claim 27. Accordingly, the Court finds that Defendant failed to prove by clear and convincing evidence that claim 27 violates Section 112, ¶ 2.

### 6.  Dependent Claim 19: Analysis Under 35 U.S.C. §112 ¶ 4

Defendant contends that claim 19 violates 35 U.S.C. §112 ¶ 4. Defendant argues that claim 18 recites "wherein the first seal of the clamp further comprises a first sealing layer and a second sealing layer configured to have at least a flexible portion of each compressed between the upper mouth portion and the lower mouth portion within the mouth of the clamp . . . ." (Dkt. No. 55 at 21) (citing '040 Patent at 6:54–58). Defendant contends that claim 18 thus requires that the first and second sealing layers each have a flexible portion. (Dkt. No, 55 at 21.) Defendant argues that claim 19 fails to further narrow claim 18 because it merely recites "wherein the first sealing layer and the second sealing layer are replaceable or flexible or both." (*Id.*) Defendant contends that because claim 18 already requires the first and second sealing layers to be flexible, claim 19 actually seeks to broaden the scope of claim 18, making flexibility an option together with replaceability. (*Id.*) According to Defendant, claim 19 thus violates Section 112, ¶ 4.

The Court finds that Defendant failed to prove by clear and convincing evidence that

claim 19 is invalid for failing to specify a further limitation of the subject matter claimed in independent claim 18. The Court finds that claim 18 only requires that the first and second sealing layers be "configured to have at least a flexible *portion*." '040 Patent at 6:56–57 (emphasis added). Claim 19 further requires that the first and second sealing layers, not just a portion thereof, "*are* replaceable or flexible or both." '040 Patent at 6:62–64 (emphasis added). Accordingly, the Court finds that Defendant failed to prove by clear and convincing evidence that claim 19 violates Section 112, ¶ 4.

### 7. Dependent Claim 21: Analysis Under 35 U.S.C. §112 ¶ 4

Defendant contends that claim 21 violates 35 U.S.C. §112 ¶ 4. Defendant argues that claim 20 recites that the "the clamp mouth, when the first clamp surface is in the clamped position, is configured to be offset from the conveyance aperture." (Dkt. No. 55 at 21) (citing '040 Patent at 7:36–38). Defendant contends that claim 21 fails to further narrow claim 20. Defendant argues that claim 21 merely explains the requirement from claim 20 that the clamp mouth center must be displaced laterally from the aperture center. According to Defendant, claim 21 thus violates Section 112, ¶ 4.

The Court finds that Defendant failed to prove by clear and convincing evidence that claim 21 is invalid for failing to specify a further limitation of the subject matter claimed in independent claim 20. As discussed above for the construction of "configured to be offset," dependent claim 21 narrows independent claim 20 by requiring the aperture to be "out of alignment" with the mouth. Specifically, dependent claim 21 requires that not only must the aperture be configured to be displaced in any direction from the mouth, but also requires the centerpoint of the aperture to be displaced in any direction from the centerpoint of the mouth. In other words, for dependent claim 21, the centerpoints must be "out of alignment" or "laterally

displaced." Accordingly, the Court finds that Defendant failed to prove by clear and convincing evidence that claim 21 violates Section 112, ¶ 4.

### 8. Dependent Claims 28, 29, 30, and 32: Analysis Under 35 U.S.C. §112 ¶ 4

Defendant contends that claim 28 and its dependent claims 29, 30, and 32 violate 35 U.S.C. §112 ¶ 4. Defendant argues that claim 20 recites "wherein the at least one conveyance comprises one or more wires separated from immediate surroundings and preventing passage of contaminants past or between the one or more wires by electrical insulation material encasing the one or more wires." (Dkt. No. 55 at 22) (citing '040 Patent at 7:36–38). Defendant argues that claim 28 fails to further narrow claim 20. Defendant contends that claim 28 merely recites that "[t]he protective enclosure of claim 20, wherein the at least one conveyance comprises one or more wires separated from one or more immediately adjacent wires." (Dkt. No. 55 at 22.) Defendant argues that claim 20 and claim 28 each are directed only at a protective enclosure, without the presence of any conveyances. (*Id.*) Defendant contends that the structure of the protective enclosure recited in claim 20 is unchanged from the structure of the protective enclosure recited in claim 28. (*Id.*) Defendant further argues that changing the conveyance characterization does not change the structure of the claimed protective enclosure. (*Id.*) According to Defendant, claim 28 thus violates Section 112, ¶ 4.

Defendant also contends that claim 29 includes the same flaw as claim 28. Defendant argues that claim 29 is also directed at a protective enclosure, without the presence of any conveyances. (*Id.*) Defendant argues that the change in characterizing the conveyance does not narrow in any way the structure of the claimed protective enclosure. (*Id.*) According to Defendant, claim 29 thus violates Section 112, ¶ 4.

Defendant also contends that claim 30 includes the same flaw as claims 28 and 29.

Defendant argues that claim 30 is also directed at a protective enclosure, without the presence of any conveyances. (*Id.*) Defendant argues that the new characterization of the conveyance does not narrow the structure of the claimed protective enclosure. (*Id.*) According to Defendant, claim 30 thus violates Section 112, ¶ 4.

Defendant also contends that claim 32 includes the same flaw as claims 28, 29, and 30. Defendant argues that claim 32 is also directed at a protective enclosure, without the presence of any conveyances. (*Id.*) Defendant contends that the change in characterizing the conveyance does not narrow in any way the structure of the claimed protective enclosure. (*Id.* at 22–23.)

The Court finds that Defendant failed to prove by clear and convincing evidence that claims 28–30 and 32 are invalid for failing to specify a further limitation of the subject matter claimed in independent claim 20. The Court finds that accommodating "one or more wires separated from one or more immediately adjacent wires," as claim 28 and its dependents require, may require structurally changing an enclosure that merely accommodates a "conveyance," as claim 20 requires. For example, as illustrated in Figure 2 of the '040 Patent, wire 114 and ribbon cables 110 have different widths.



'040 Patent at Figure 2. Thus, the protective enclosures of claim 28 and its dependents must accommodate not only a "conveyance" such as wire 114, but also "one or more wires separated from one or more immediately adjacent wires," such as ribbon cables 110. Accordingly, the

Court finds that Defendant failed to prove by clear and convincing evidence that claims 28–30 and 32 violate Section 112, ¶ 4.

### 9. Dependent Claims 10 and 11: Analysis Under 35 U.S.C. §112 ¶ 4

Defendant contends that claims 10 and 11 violates 35 U.S.C. §112 ¶ 4. Defendant argues that claim 10 fails to further narrow claim 1 because it only recites, "wherein the enclosure is configured to hold a control device for a model vehicle." (Dkt. No. 55 at 23) (citing '040 Patent at 5:63–64). Defendant argues that this dependent claim fails to provide any structural limitations on the recited "protective enclosure." (Dkt. No. 55 at 23.) Defendant contends that it instead recites an intended use for the enclosure. (*Id.*) Specifically, "wherein the enclosure is configured to hold a control device for a model vehicle." (*Id.* at 24.) Defendant argues that the recited "control device" is not part of the apparatus recited in claim 10. (*Id.*) According to Defendant, claim 10 thus violates Section 112, ¶ 4.

Defendant also argues that claim 11 includes the same flaw as claim 10. Defendant contends that claim 11 recites "[t]he protective enclosure of claim 10 wherein the control device comprises at least one selected from the list comprising: an electronic module, a mechanical module and an electromechanical module." (Dkt. No. 55 at 24) (citing '040 Patent at 5:65–67). Defendant contends that claim 11 does not provide any structural limitations on the recited "protective enclosure" of claim 1. Defendant argues that characterizing the "control device" is not material because the recited "control device" is not part of the apparatus recited in Claim 10. According to Defendant, claim 11 thus violates Section 112, ¶ 4.

The Court finds that Defendant failed to prove by clear and convincing evidence that claims 10 and 11 are invalid for failing to specify a further limitation of the subject matter claimed in claim 1. Claim 10 recites a protective enclosure "*configured to* hold a control device

for a model vehicle." '040 Patent at 5:63–64 (emphasis added). Claim 11 recites that "the control device comprises at least one selected from the list comprising: an electronic module, a mechanical module and an electromechanical module." *Id.* at 5:65–67. Thus, dependent claims 10 and 11 further specify the protective enclosure's structural requirements, not its performance. For example, the specification states the following regarding the enclosure and control device:

> Enclosure 100, as illustrated, is configured to house a control device for a model vehicle, for example a remotely controllable model car, in an environment protected from contaminants, such as water, mud, dirt and snow. The control device may comprise an electronic module, such as a receiver, transmitter, sensor, switch or power supply, a mechanical module, such as a gear, lever or valve assembly, and/or an electromechanical module, such as a motor, generator, or mechanically operated electrical switch. Some embodiments of enclosure 100 may house multiple modules.

'040 Patent at 2:40–49. Specifically, claims 10 and 11 not only require an enclosure that meets all the limitations of claim 1, but also require an enclosure "*configured to* hold a control device for a model vehicle." '040 Patent at 5:63–64 (emphasis added). In other words claims 10 and 11 further require the enclosure to have an appropriate size and shape, which further limits the enclosure claimed in independent claim 1. Accordingly, the Court finds that Defendant failed to prove by clear and convincing evidence that claims 10 and 11 violate Section 112, ¶ 4.

## IV.    CONCLUSION

The Court adopts the above constructions. The parties are ordered that they may not refer, directly or indirectly, to each other's claim construction positions in the presence of the jury. Likewise, the parties are ordered to refrain from mentioning any portion of this opinion, other than the actual definitions adopted by the Court, in the presence of the jury. Any reference to claim construction proceedings is limited to informing the jury of the definitions adopted by the Court.

**It is SO ORDERED.**

**SIGNED this 27th day of August, 2015.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE